UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY NEWSOME,

                Plaintiff,        Civil Action No. 13-14649
                                        Honorable John Corbett O'Meara
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 17]**

      Plaintiff Randy Newsome ("Newsome") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [16, 17], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Newsome is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [17] be GRANTED, Newsome's Motion for Summary Judgment [16] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.      REPORT**

     **A.      Procedural History**

On April 18, 2011, Newsome filed applications for DIB and SSI, alleging a disability onset date of October 27, 2010. (Tr. 167-81). These applications were denied initially on August 15, 2011. (Tr. 79-86). Newsome filed a timely request for an administrative hearing, which was held on May 30, 2012, before ALJ Richard Gartner. (Tr. 1-35). Newsome, who was represented by attorney Joni Fixel, testified at the hearing, as did vocational expert Zachary Matthews. (*Id.*). On June 27, 2012, the ALJ issued a written decision finding that Newsome is not disabled. (Tr. 61-68). On September 2, 2013, the Appeals Council denied review. (Tr. 72-76). Newsome filed for judicial review of the final decision on November 8, 2013. (Doc. #1).

     **B.      Background**

          *1.      Newsome's Reports and Testimony*

At the time of the May 2012 administrative hearing, Newsome was 52 years old. (Tr. 5). He lived in a mobile home with his wife and had two adult children. (Tr. 6-7). He has a high school diploma and took some community college courses. (Tr. 5, 197). From 1982 to 2010, Newsome worked in various maintenance positions at Albion College. (Tr. 7-8, 197). He testified that his employment was terminated in October 2010 when he missed too much work after injuring his foot (falling off a ladder at work) and then contracting "double pneumonia."[1] (Tr. 15-18). At the hearing, Newsome testified that he has been looking for work and would still be working today if his employment had not been terminated. (Tr. 19-20).

Newsome reported that he suffered from both physical and mental impairments during the relevant time period. (Tr. 196). Physically, Newsome reported suffering from two herniated

---

[1] Medical records reveal that Newsome had bronchitis during this time period, but there is no indication he was ever diagnosed with pneumonia (or "double pneumonia"). (Tr. 256-63).

2

discs, diabetes, a hernia, concussions, and colitis.[2]  (Tr. 21, 196).  From a mental perspective, Newsome indicated that he has an anxiety disorder and "cannot deal with people anymore."  (Tr. 19, 196).  He takes numerous medications for both his physical and mental conditions, including Lomotil, Prinzide, Xanax, Soma, and Vicodin.  (Tr. 12, 28, 199).

Newsome is able to drive.  (Tr. 7, 216).  In addition, he is able to attend to his own personal care, although his wife sometimes needs to remind him to take medication.  (Tr. 214-15).  He is able to go shopping, mow the lawn, do the dishes, clean the house, and cook some meals.  (Tr. 22, 216).  He cares for his elderly father who is "not in great shape."  (Tr. 22-23).  He enjoys fishing, hunting, and watching television.  (Tr. 21-22, 217).  He spends time with others and attends religious services.  (Tr. 23, 217).  However, he indicated that he cannot pay attention for long periods of time, does not follow written instructions well, and does not handle stress well.  (Tr. 24, 218-19).

       2.     *Medical Evidence*

In May 2008, Newsome presented to the emergency department at Oaklawn Hospital after he fell off the back of a truck while at work.  (Tr. 226-34).  X-rays of his left elbow, left forearm, left knee, and right shoulder were all negative.  (Tr. 230-34).  X-rays of his lumbar spine revealed only mild degenerative changes.  (Tr. 233).  He was diagnosed with acute contusions to his knee, forearm, and elbow, and an acute low back contusion with lumbar strain, and he was treated with medication.  (Tr. 228).

Newsome treated with his primary care physician, Dr. Martin Holmes, on several occasions between October 2009 and November 2010 for conditions that include diabetes

---

[2] Again, as discussed in greater detail below, it is worth noting that there is no indication in the medical record that Newsome actually has herniated discs or that he was ever diagnosed with colitis.  At the hearing, his attorney stated, "I don't know that there is any record that specifically points to colitis."  (Tr. 11).

3

mellitus, generalized anxiety disorder, and diarrhea. (Tr. 256-86). It appears that Newsome first complained of diarrhea to Dr. Holmes in January 2010, saying at that time that the onset was sudden and had been occurring for two days. (Tr. 281). At his next visit, however, on March 15, 2010, he reported suffering from frequent diarrhea for two years and was prescribed Lomotil. (Tr. 278-79). When he returned to see Dr. Holmes on April 13, 2010, he had only his "usual back complaints," which were "no worse" than usual and controlled with medication. (Tr. 275). At subsequent visits in April, May, and August 2010, Newsome continued to report suffering from diarrhea, but laboratory tests were negative for a microbial cause and there is no indication of a colitis diagnosis.[3] (Tr. 264-73). It was suspected that Newsome's diarrhea could be caused, at least in part, by Glucophage, a medication he was taking to control his diabetes mellitus. (Tr. 270, 272). Dr. Holmes continued to treat this condition with medication.

On August 26, 2010, Newsome was seen at Albion Medical Associates after he fell from a ladder at work and injured his left foot, left wrist, and left hip. (Tr. 254-55). X-rays were ordered, his left leg was placed in a splint, and he was given crutches. (Tr. 255). He was cleared to return to work in a sit-down job, and a follow-up visit was scheduled. (*Id.*). On August 30, 2010, Newsome returned to this clinic, reporting that his employer had been unable to find sit-down work for him and had sent him home. (Tr. 252). Newsome eventually was cleared to return to work without restrictions on October 7, 2010. (Tr. 244-45).

On August 1, 2011, Newsome underwent a consultative psychological examination with Thomas M. Horner, Ph.D. (Tr. 287-91). At that time, Newsome reported suffering from an anxiety disorder, for which he took Xanax. (Tr. 287). On examination, his speech was articulate, his attention and concentration were focused and sustained, and his mood was

---

[3] On August 5, 2010, it was noted that Newsome had undergone a colonoscopy, which "showed a few polyps but [was] otherwise unremarkable." (Tr. 235-36, 266).

4

pleasant. (Tr. 290). Dr. Horner diagnosed generalized anxiety disorder, controlled with medication; assigned a Global Assessment of Functioning ("GAF")[4] score of 60; and characterized his prognosis as "stable." (Tr. 291). In summary, Dr. Horner opined that Newsome's ability to relate to others was intact, as were his abilities to understand, remember, and carry out familiar tasks; sustain attention to relevant occupational tasks; and cope with the stresses of ordinary occupational activity. (*Id.*).

### 3.  *Vocational Expert's Testimony*

Zachary Matthews testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 30-34). The VE characterized Newsome's past relevant work as a building maintenance repairman as skilled in nature and performed at the very heavy exertional level. (Tr. 31). Then, the ALJ asked the VE to imagine a claimant of Newsome's age, education, and work experience, who could perform light work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; must have brief access to a restroom every 2 to 2.5 hours during the workday; limited to simple, routine, repetitive tasks not performed in a fast-paced production environment and involving only simple work-related decisions and few workplace changes; and only occasional interaction with the general public. (Tr. 32). The VE testified that the hypothetical individual would not be capable of performing Newsome's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in the light, unskilled jobs of sorter (5,000 jobs in the state of Michigan), packer or packager (7,000 jobs), and production worker (10,000 jobs). (Tr. 32-33).

---

[4] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

C. **Framework for Disability Determinations**

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Newsome is not disabled under the Act. At Step One, the ALJ found that Newsome has not engaged in substantial gainful activity since October 27, 2010, the alleged onset date. (Tr. 63). At Step Two, the ALJ found that Newsome has the severe impairments of anxiety disorder, hyperlipidemia, diabetes mellitus, hypertension, back pain (degenerative disc disease), obesity, and diarrhea. (*Id.*). At Step Three, the ALJ found that Newsome's impairments do not meet or medically equal a listed impairment. (Tr. 64-65).

The ALJ then assessed Newsome's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following limitations: no climbing ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; must have brief access to a restroom every 2 to 2.5 hours during the workday; limited to simple, routine, and repetitive tasks not performed in a fast-paced production environment, and involving only simple work-related decisions and few workplace changes; and only occasional interaction with the general public. (Tr. 65-66).

At Step Four, the ALJ determined that Newsome is unable to perform his past relevant work as a building maintenance repairman. (Tr. 66-67). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Newsome is capable of performing a significant number of jobs that exist in the national economy. (Tr. 67-68). As a result, the ALJ concluded that Newsome is not disabled under the Act. (Tr. 68).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the

7

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.     Analysis

Newsome argues that, in concluding he is not disabled, the ALJ failed to adequately assess the credibility of his subjective complaints and to properly account for his moderate limitations with respect to concentration, persistence, or pace. A review of the record and the ALJ's decision, however, makes clear that the ALJ committed no error warranting remand.

*1.     The ALJ's Credibility Determination is Supported by Substantial Evidence*

Newsome first argues that the ALJ erred in assessing his credibility. (Doc. #16 at 17-21). In making this assertion, Newsome essentially ignores the reasons articulated by the ALJ for discounting his credibility and fails to cite any evidence of record that the ALJ failed to properly consider. As set forth more fully below, the ALJ reasonably discounted Newsome's allegations of disabling limitations because they were inconsistent with the objective medical evidence, the consulting psychologist's opinion, and Newsome's activities of daily living. (Tr. 63-66).[5]

---

[5] The ALJ's analysis was also procedurally proper. Contrary to Newsome's argument that the ALJ put the "cart before the horse" by "determin[ing] the residual functional capacity("RFC") before he considered the effects of [Newsome's] testimony as to his [various impairments]," (Doc. #16 at 17-18), the ALJ made clear that his RFC determination was made *in light of*, not *separate and apart from*, his analysis of Newsome's credibility. (Tr. 65 (explaining that the ALJ "must evaluate the intensity, persistence, or functionally limiting effects of the claimant's symptoms **to determine the extent to which they limit the claimant's functioning**. **For this purpose**, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, **[the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record**.") (emphasis added)). This approach avoids the pitfalls that the Seventh Circuit was concerned about in the principal case relied upon by Newsome, *Bjornson v. Astrue*, 671 F.3d

9

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996).

Here, the ALJ discussed the objective medical evidence regarding Newsome's impairments. He considered Newsome's reports and hearing testimony that he has herniated discs in his back, but found no evidence of this, noting that the medical records refer only to sciatica and back pain. (Tr. 66, 196, 275). Indeed, the only x-rays of Newsome's lumbar spine in the record reveal only mild degenerative changes. (Tr. 233). Likewise, the ALJ noted that, contrary to Newsome's testimony, there was no evidence in the record indicating that he was diagnosed with colitis. (Tr. 66). The ALJ specifically noted that a colonoscopy revealed only a

---

640, 645-46 (7th Cir. 2012).

few polyps and was otherwise unremarkable. (Tr. 66, 266). In addition, after Newsome injured his left foot, left wrist, and left hip when he fell from a ladder at work on August 26, 2010, he appeared to recover fairly quickly; by October 7, 2010, he was released to return to work without any restrictions.[6] (Tr. 66, 244). At subsequent visits to Dr. Holmes in October and November 2010, Newsome had a normal gait. (Tr. 66, 256, 262). The ALJ also noted that Newsome was treated conservatively with medication. (Tr. 66, 256-86).

Moreover, the consultative psychological examiner, Dr. Thomas Horner, found that Newsome's generalized anxiety disorder is controlled with medication. (Tr. 291). He further opined that Newsome's ability to relate to others is intact, as are his abilities to understand, remember, and carry out familiar tasks and sustain attention to relevant occupational tasks. (*Id.*). In addition, Dr. Horner opined that Newsome's ability to cope with the stresses of ordinary occupational activity is adequate. (*Id.*).

In light of this objective medical evidence, the ALJ's RFC finding adequately accommodated Newsome's physical and mental impairments. (Tr. 65). The ALJ concluded that Newsome can perform light work, with the following limitations: no climbing ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; must have brief access to a restroom every 2 to 2.5 hours during the workday; limited to simple, routine, and repetitive tasks not performed in a fast-paced production environment, and involving only simple work-related decisions and few workplace changes; and

---

[6] In his reply brief, Newsome asserts that the ALJ and the Commissioner "misread" the medical evidence in claiming that he was returned to work without restrictions. (Doc. #18 at 3). According to Newsome, he was given "a pair of crutches and allowed [] to return to work *with sit down work restriction, elevating left leg*." (*Id.* (citing Tr. 255)). A review of the medical record, however, reveals that Newsome is mistaken; although he *initially* was restricted to sit-down work – on August 26, 2010 (the day he was injured) – he subsequently received progressively fewer restrictions over the next few weeks, and was ultimately cleared to return to work "without any restriction" on October 7, 2010. (Tr. 244-55).

only occasional interaction with the general public. (Tr. 65-66). Newsome has offered no evidence justifying greater limitations than those the ALJ identified.

In addition, the ALJ noted that Newsome's allegations of disabling limitations are not consistent with his reported daily activities. (Tr. 66). For example, the ALJ noted that Newsome is able to drive, cook, help care for his father, and attend religious services. (Tr. 20-23, 66). In addition, Newsome indicated that he can go shopping, mow the lawn, and clean the house, and he enjoys fishing and hunting. (Tr. 21-22, 216-17). It was appropriate for the ALJ to consider these facts in assessing his credibility. *See* 20 C.F.R. §416.929(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain). The ALJ also reasonably discounted Newsome's allegations of disabling limitations in light of his hearing testimony that he would still be working if he had not been fired. (Tr. 66).

In the face of all of this substantial evidence, Newsome relies on own his testimony and his subjective complaints to physicians. (Doc. #16 at 20-21). For example, Newsome testified that, because of his anxiety disorder, he "cannot deal with people"; the ALJ noted, however, that this assertion is inconsistent with Newsome's testimony that he attends religious services. (Tr. 19, 23, 66). It is also inconsistent with Dr. Horner's opinion that Newsome's ability to relate to others is intact. (Tr. 291). Similarly, Newsome's argument that he would miss multiple days of work each month is belied by his comments to Dr. Holmes that he experiences periodic cramps and diarrhea, which cause him to miss work about once a month. (Tr. 264).

In arguing that the ALJ erred in evaluating his credibility, Newsome relies most heavily on an August 2012 "letter of support" from Dr. Holmes which purportedly confirms a colitis diagnosis. (Doc. #16 at 20-21 (citing Tr. 295)). Specifically, Newsome asserts that this letter

confirms "the duration and extent of that one impairment that the ALJ seemed to have a hard time accepting as true [e.g., colitis]." (Doc. #18 at 4). Newsome's reliance on this letter is problematic for several reasons, however. This letter post-dates the ALJ's June 2012 decision and, therefore, was not submitted to the ALJ. Such evidence cannot be considered for purposes of substantial evidence review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) (where the Appeals Council denies review of the ALJ's decision, evidence first submitted to the Appeals Council cannot provide a basis for deeming the ALJ's decision unsupported by substantial evidence).

The only context in which this Court may consider evidence submitted by Newsome after the ALJ issued his decision is to determine whether it merits remand pursuant to sentence six of 42 U.S.C. §405(g). However, Newsome did not even *mention* a sentence six remand until submitting his reply brief, thus waiving this argument. *See Martinez v. Comm'r of Soc. Sec.*, 2011 WL 1233479, at *2 n. 1 (E.D. Mich. Mar. 30, 2011) (arguments raised for the first time in a reply brief are waived). Moreover, even if the Court were to consider the merits of this argument, in order for a case to be remanded back to the ALJ for consideration of new evidence, the evidence must be material, and good cause must be shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. §405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Here, Newsome has offered no justification for his failure to submit this evidence sooner. And, indeed, where Dr. Holmes was Newsome's treating physician during the relevant time period, it is difficult to see why Newsome could not have obtained such evidence prior to the administrative hearing.

Moreover, and perhaps even more importantly, Newsome has not established that Dr. Holmes' August 2012 letter is material. The Sixth Circuit has held that for new evidence to be

13

material there must be "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 711 (6th Cir. 1988). Here, the letter Newsome relies on clearly states that although he suffers from frequent diarrhea, he has never been "pathologically diagnosed" with colitis. (Tr. 295). It also states that Newsome had "complete work ups for any infectious agent," which were negative. (*Id.*). The letter also indicates that, with reduced stress, Newsome's condition had improved. (*Id.*). The Court simply is not persuaded that there is a "reasonable probability" that the ALJ would have evaluated Newsome's credibility differently if presented with this letter.

In sum, while Newsome might disagree with the ALJ's credibility assessment, he has failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Newsome's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.[7]

---

[7] Newsome also argues that the ALJ erred in using a "boilerplate template" to conclude that his statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Doc. #16 at 17-18 (citing Tr. 66). In support of this position, Newsome points to the Seventh Circuit's criticism of the Social Security Administration's repeated use of "template" language in addressing a claimant's credibility in *Bjornson*, 671 F.3d at 645-46. However, Newsome's case is distinguishable from *Bjornson*. Here, as discussed above, the ALJ here went well beyond this form language, and provided several detailed reasons for discounting Newsome's credibility. Thus, the Court does not find that the ALJ inadequately articulated his credibility determination. *See, e.g., Barbera v. Comm'r of Soc. Sec.*, 2012 WL 2458284, at *14-15 (E.D. Mich. June 5, 2012).

> 2.  *The ALJ's RFC Finding Adequately Accommodated Newsome's Moderate Difficulties in Maintaining Concentration, Persistence, or Pace*

In his decision, the ALJ found that Newsome has the severe mental impairment of generalized anxiety disorder, which imposes limitations on his ability to work. (Tr. 63). The ALJ then concluded that Newsome retains the mental RFC to perform simple, routine, and repetitive tasks, so long as they are not performed in a fast-paced production environment and involve only simple work-related decisions and few workplace changes. (Tr. 65-66). In his motion, Newsome argues that the ALJ's mental RFC finding failed to properly take into account his moderate limitations with respect to concentration, persistence, or pace ("CPP"). (Doc. #16 at 21-25).

As an initial matter, substantial evidence supports the ALJ's finding that Newsome retains the mental RFC to perform work that is limited to simple, routine, and repetitive tasks not performed in a fast-paced production environment and involving only simple work-related decisions and few workplace changes. The consultative psychological examiner, Dr. Horner, opined that Newsome's ability to relate to others is intact, as are his abilities to understand, remember, and carry out familiar tasks; sustain attention to relevant occupational tasks; and cope with the stresses of ordinary occupational activity. (Tr. 291). Newsome has not pointed to any evidence contradicting or undermining the ALJ's translation of the evidence into functional limitations.

Rather, citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), and other cases, Newsome argues that the ALJ's limitation to "simple," "routine," and "repetitive" work does not adequately address his moderate CPP limitations. (Doc. #16 at 23-24). This is a frequently litigated issue in the Eastern District of Michigan. It is true that, in certain situations, courts have held that limiting a claimant to merely "simple," "unskilled," or "routine" work is

insufficient to address moderate CPP deficiencies.[8] It is equally true, however, that courts have held that, under some circumstances, limitations like those imposed by the ALJ in the instant case adequately account for such deficiencies. *See, e.g., Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) ( "unskilled" work limitation in RFC was sufficient to account for ALJ's finding that claimant "often" experiences issues with CPP); *Edmunds v. Comm'r of Soc. Sec.*, 2010 WL 3633768, at *8 (E.D. Mich. Aug. 17, 2010) (substantial evidence supported ALJ's finding that claimant with moderate CPP deficiencies could perform "simple, routine, repetitive" work).

There is no bright-line rule requiring remand whenever an ALJ's RFC finding includes a limitation to "simple," "routine," or "unskilled work" but does not contain a more specific concentration-related limitation. *See Jones v. Comm'r of Soc. Sec.*, 2012 WL 4355532, at *9 (E.D. Mich. Sept. 24, 2012); *Caradine v. Comm'r of Soc. Sec.*, 2013 WL 388729, at *7 (E.D. Mich. Jan 11, 2013). Rather, the court must look at the record as a whole and determine whether substantial evidence supports the RFC. *See Jones*, *supra* at *9; *Caradine, supra* at *7; *Lewicki v. Comm'r of Soc. Sec.,* 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace."). Here, Newsome was not just limited to simple, routine, and repetitive tasks; rather, the ALJ's mental RFC finding contains additional concentration-related limitations, which Newsome essentially ignores. Specifically, the ALJ restricted Newsome to performing simple, routine, and repetitive tasks *outside a fast-paced production environment*. (Tr. 65-66).

---

[8] *See, e.g., Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007); *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009).

He also restricted Newsome to work environments requiring *only simple work-related decisions* and *few workplace changes*. (*Id.*). Notwithstanding these (and Newsome's other) restrictions, the VE testified to various jobs that Newsome could perform which existed in the national economy. Given the specificity of the ALJ's mental RFC finding, and the fact that Newsome has not identified any additional concentration-related limitations that the ALJ should have imposed, the Court finds that the ALJ adequately accounted for Newsome's moderate CPP limitations.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [17] be GRANTED, Newsome's Motion for Summary Judgment [16] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: September 24, 2014           s/David R. Grand
Ann Arbor, Michigan                 DAVID R. GRAND
                                    United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2014.

                                    s/Eddrey O. Butts
                                    EDDREY O. BUTTS
                                    Case Manager